IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**NATHAN POWELL,**

        Plaintiff,

  v.

**ADLERHORST INTERNATIONAL, INC.,** a California corporation,

        Defendant.

No. 3:14-cv-01827-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Nathan Powell brings this action against Defendant Adlerhorst International, Inc., asserting both a strict product liability and a negligence claim for injuries sustained from dog bites on April 19, 2012. Defendant moves for summary judgement [26]. I DENY Defendant's motion. There are still genuine issues of material fact concerning whether the dog was defective and unreasonably dangerous at the time Defendant sold it to the City of Sherwood and whether Defendant was negligent.

    **I.**    **BACKGROUND**

    Defendant Adlerhorst International, Inc. is a California corporation owned and operated by David Reaver. Adlerhorst procures and imports dogs from Europe which have already been trained in the Schutzhund sport and sells these dogs to police agencies around the country to be trained and used as police service dogs. Mr. Reaver travels to Europe six to eight times a year to evaluate each dog before purchase, including tests for temperament, obedience, and responsiveness to commands.

    During a trip to Europe in June 2011, Mr. Reaver selected and purchased Azi, a German Shepherd, and imported him to the United States. Two weeks later, Adlerhorst sold Azi to the City of

1 –OPINION AND ORDER

Sherwood, Oregon. In the months following Sherwood's purchase of Azi, the Clackamas County Sheriff's Department spent over two hundred hours training Azi, consisting of exercises, field training, and classroom instruction. Azi eventually met the requirements to obtain his Oregon Police Canine Association (OCPA) certification as a police dog. Adlerhorst has included in its motion statements by several individuals who interacted with and trained Azi supporting Adlerhorst's position that Azi was not overly aggressive or unsuited to be a police dog.

On April 19, 2012, Sergeant Nathan Powell was on duty as a police officer with the Sherwood Police Department when he and a coworker walked out of the police building and into the fenced yard toward the parking lot. At that time, Azi was off-leash and also in the yard with his handler. As Sergeant Powell and his coworker were walking through the yard, Azi ran toward Sergeant Powell and lunged toward his face. When Powell blocked his face with his right arm, Azi bit Powell's arm and refused to release, despite commands from his handler. Azi's handler was only able to pull Azi off of Powell by lifting Azi off of the ground by his choke collar for several seconds.

Sergeant Powell alleges Adlerhorst sold Azi to the City of Sherwood in an unreasonably dangerous defective condition, and therefore Adlerhorst is liable for strict product liability under Oregon law. Sergeant Powell also alleges that Adlerhorst is liable for common law negligence because it failed to accurately evaluate and screen Azi and sold him to the City of Sherwood when Azi was over aggressive and unfit to be a police service dog. Adlerhorst contends Azi was not in an unreasonably dangerous defective condition when it sold him to the City of Sherwood and the training Azi underwent subsequent to the sale would disqualify Powell from recovering under Oregon strict product liability law. Adlerhorst further contends that because Azi was not defective and unreasonably dangerous when sold to the City of Sherwood, Powell cannot prevail on his negligence claim. On summary judgment, Adlerhorst argues that no reasonably jury could find otherwise.

## II. LEGAL STANDARDS

The court shall grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The movant has the burden of showing that there is no genuine issue of fact.'" *Anderson*, 477 U.S. at 256. The moving party may carry its initial burden on summary judgment by "showing" that the opposing party lacks sufficient evidence to carry its ultimate burden of persuasion at trial. FRCP 56(c)(1)(B); *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Catrett*, 477 U.S. at 330.

In evaluating a motion for summary judgment, a court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weight the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000).

## III. ANALYSIS

Sergeant Powell asserts two claims against Adlerhorst. The first is a strict product liability claim; the second is a common law negligence claim. Adlerhorst seeks summary judgment on both of these claims. In its motion for summary judgment, Adlerhorst includes declarations by several individuals that claim that prior to attacking Powell, Azi had shown no behavioral, temperament, aggression, or control problems. Adlerhorst relies on these statements to make the argument that summary judgment for both claims is proper because no reasonable jury could find that Azi was unreasonably dangerous at the time it sold Azi to the City of Sherwood. In his response, Powell offers the expert opinion of Dr. Richard

Polsky who states that Azi was inherently defective and never should have been sold to the City of Sherwood. (Pl. Resp. [28] at 10.) Adlerhorst responds by arguing I should disregard Dr. Polsky's expert report because it is insufficient to create an issue of fact due to his lack of qualifications, absence of supporting facts, and improper scientific method. (Def. Reply [33] at 11-18.)

Before I can reach the issue of whether Adlerhorst will prevail on summary judgment on the strict product liability and negligence claims, I must first determine whether I should disregard Dr. Polsky's expert opinion. After I have reached a determination regarding Dr. Polsky's opinion, I will address whether summary judgment is proper for either the strict product liability or negligence claim.

### A. Admissibility of Dr. Polsky's Expert Opinion

The admissibility and sufficiency of expert testimony is governed by Federal Rule of Evidence 702. *See Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Rule 702 establishes several requirements for admissibility: first, the evidence must "help the trier of fact" either to "understand the evidence or to determine a fact in issue;" second, the witness has to be sufficiently qualified to render the opinion. Fed. Rule Evid. 702. The requirement that the opinion testimony "[help] the trier of fact . . . goes primarily to relevance." *Daubert*, 509 U.S. at 591. The trial court must be assured that the expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597.

The district court is a gatekeeper in determining whether expert testimony is sufficiently reliable to be of use to a jury. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 596). The Supreme Court has

emphasized that the "test of reliability is 'flexible'" and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable based on "the particular circumstances of the particular case." *Kumho*, 526 U.S. at 141, 150, 152. "When an expert meets the threshold established by Rule 702, . . . the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565.

Dr. Polsky's opinion is clearly relevant, thereby satisfying the first requirement under Rule 702. What is relevant depends on what Sergeant Powell must prove to prevail on his strict product liability and negligence claims. *See Primiano*, 598 F.3d at 565 ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.") (citation omitted). As discussed in more detail below, one of the elements Powell must prove to prevail on his strict product liability claim is that Azi was defective and unreasonably dangerous at the time Adlerhorst sold Azi to the City of Sherwood. Similarly, one of the elements Powell seeks to prove in his negligence claim is that Adlerhorst knew or should have known that Azi was overly aggressive, disobedient, or vicious. Dr. Polsky's opinion includes testimony, based on the materials he reviewed, that Azi was unfit to be sold to the City of Sherwood to be trained as a police service dog. This is enough to meet the relevance requirement under Rule 702.

Dr. Polsky's expert opinion testimony is also reliable, thereby meeting the second requirement under Rule 702. Adlerhorst contends Dr. Polsky's testimony should be disregarded because he did not personally examine Azi and he does not cite any studies to support his opinions. (Def. Reply [33] at 14.) This, however, does not constitute automatic grounds for inadmissibility. Dr. Polsky bases much of his opinion on his review of the temperament testing and selection procedure that Mr. Reaver performed on Azi. (Polsky Dec. [31] at 2-4.) Based on this review, Dr. Polsky determined Mr. Reaver's procedure was not a valid or reliable means of determining whether Azi had the temperamental qualities required for

5 –OPINION AND ORDER

performing police dog tasks. (Supp. Polsky Dec. [37] at 2.) Furthermore, even though Dr. Polsky never personally examined Azi, he did review a video recorded before Azi was sold to the City of Sherwood. Dr. Polsky says the video depicts the "aggressive nature of Azi" and "it is apparent that Azi was not well-controlled by Adlerhorsts's own handler, was over-reactive, and failed to release the bite." (Polsky Dec. [31] at 5.) As for the lack of a publication backing his opinion up, *Daubert* makes clear that this does not necessarily preclude an expert's opinion from being admissible. *See Daubert*, 509 U.S. at 593.

Adlerhorst also argues Dr. Polsky does not have the experience, education, or training to opine about the nature of a police dog or the expectations of a consumer.[1] (Def. Reply [33] at 14.) This does not appear to be the case. Dr. Polsky holds a Ph.D. in animal behavior and has over thirty years of practice and experience as an applied animal behaviorist. (Polsky Dec. [31], Ex. 1.) He has presented at numerous scientific meetings on a range of topics involving dog behavior including dog aggression specifically. He is a member of several professional societies, has published numerous papers in veterinary and animal behavior journals, and has given many lectures and seminars on dog aggression. (*Id.*) Furthermore, Dr. Polsky has been retained as a dog behavior expert in over 315 civil and criminal cases and has testified as an expert on dog aggression in over 50 trials, including six involving attacks by police service dogs. (*Id.*)

The jury may reject Dr. Polsky's opinion. It may conclude Mr. Reaver's method of evaluating and screening Azi was appropriate and Azi was not defective and unreasonably dangerous when sold to the City of Sherwood. Or it may accept Dr. Polsky's opinion and conclude his interpretation of evidence and other testimony demonstrates Azi was indeed unreasonably dangerous at the time of the sale. But those possibilities bear on the merits of Powell's claim, not on the admissibility of Dr. Polsky's

---

[1] The basis for this argument is that Dr. Polsky "has not written any peer reviewed articles concerning police dogs; he has not served as a police officer; he has not administered a law enforcement canine unit; he has not been retained by any police agency to teach management of canine units or to train canine service animals; he has not trained dogs for the Schutzhund sport." (Def. Reply [33] at 14.)

testimony. Given that I am "a gatekeeper, not a fact finder," the gate should not be closed to Dr. Polsky's relevant opinion offered with sufficient foundation by one qualified to give it. *U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). "Where the foundation is sufficient, the litigant is entitled to have the jury decide upon [the expert's] credibility, rather than the judge." *Primiano*, 598 F.3d at 566 (internal quote and citation omitted).

### B. Sergeant Powell's Strict Product Liability Claim

Oregon's product liability law is governed by statute. The elements required to prove the liability of a seller of a product are set out in O.R.S. 30.920 as follows:

> (1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:
>
> > (a) The seller or lessor is engaged in the business of selling or leasing such a product; and
> >
> > (b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

Or. Rev. Stat. 30.920. Oregon courts have determined that a live animal is a "product" under Oregon's product liability statute. *See, e.g., Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 117, 700 P.2d 1054, 1058 (1985). Furthermore, neither party is disputing that Adlerhorst was "engaged in the business of selling" dogs with Schutzhund training like Azi. Adlerhorst argues that there is insufficient evidence for a reasonable jury to find that Azi was "unreasonably dangerous" when it sold Azi to the City of Sherwood. Adlerhorst also argues that there is insufficient evidence for a reasonable jury to find that at the time of the incident, Azi was "without substantial change" in the condition in which he was sold. I conclude that there is a genuine issue of material fact regarding both the "unreasonably dangerous" and "without substantial change" elements, therefore summary judgment is not appropriate on Sergeant Powell's strict product liability claim.

7 –OPINION AND ORDER

### 1. *Unreasonably Dangerous*

To determine whether a product was "in a defective condition unreasonably dangerous to the user or consumer" under O.R.S. 30.920, Oregon has adopted the "consumer expectations test" pursuant to § 402A of the Restatement (Second) of Torts, comments a–m, as the theory of liability. *See McCathern v. Toyota Motor Corp.*, 332 Or. 59, 77–79, 23 P.3d 320, 330–32 (2001) (rejecting the "reasonable manufacturer test" in favor of the "consumer expectations test," which is in keeping with the language of O.R.S. 30.920 and § 402A of the Restatement (Second) of Torts). The plaintiff must prove two things under the consumer expectations test: (1) the product was in a defective condition not contemplated by the ultimate consumer which made it unreasonably dangerous; and (2) the defective product was dangerous to an extent beyond that which the ordinary consumer would have expected. *Crosswhite v. Jumpking, Inc.*, 411 F. Supp. 2d 1228, 1231 (D. Or. 2006) (citing *McCathern*, 332 Or. at 77–79; ORS 30.920 (1)–( 3)).

Adlerhorst asserts that Azi was not in an unreasonably dangerous condition when he left Adlerhorst's hands and was not more dangerous than an ordinary consumer of such a product would expect. (Def. Sum. J. Mot. [26] at 12.) Adlerhorst provides evidence that the consumer in this case—the City of Sherwood, including Azi's handler and trainer—did not think Azi was unreasonably dangerous for his intended purposes. (*Id.*) Sergeant Powell must show that at the time Azi left Adlerhorst's possession, Azi was in a condition not contemplated by an ordinary consumer which rendered him unreasonably dangerous. "The burden of proof that the product was in a defective condition at the time it left the hands of the particular seller is upon the injured plaintiff, and unless evidence can be produced which will support the conclusion that it was then defective, the burden will not be sustained." *Crosswhite*, 411 F. Supp. 2d at 1231 (quoting § 402A, Comment g).

Sergeant Powell argues that the record is replete with evidence from which a reasonable jury could find that Azi was dangerous to an extent beyond what an ordinary consumer of a police service dog would expect. For example, Mr. Reaver admits in his declaration that a suitable dog is one that has a good temperament, is obedient, and is responsive to commands. (Reaver Aff. ¶¶ 2 and 3.) Powell offers Dr. Polsky's expert opinion that Azi was unreasonably dangerous at the time of the sale and more dangerous than an ordinary police force would expect. As discussed above, Dr. Polsky bases his opinion, in part, on a video that he says demonstrates Azi was not well controlled by Adlerhorst's handler, was over-reactive, and failed to release his bite. (Polsky Dec. [31] at 5.) Dr. Polsky's expert opinion is enough to create a genuine issue of material fact about whether Azi was unreasonably dangerous under the consumer expectations test.

### 2. *Without Substantial Change*

The second element at issue is whether the product was "expected to and does reach the user or consumer without substantial change in the condition in which it [was] sold or leased." Or. Rev. Stat. 30.920(1)(b). Adlerhorst argues there is no genuine issue of material fact regarding this element because both Adlerhorst and the City expected that Azi would be retrained and modified by the City to be a police service dog and Azi was, in fact, retrained and modified. (Mot. [26] at 12-13.) Adlerhorst contends there is no evidence that Azi ever bit anyone without a protective sleeve before he received training from the police department; Azi was taught during his training that biting someone without a protective sleeve was permitted. (Def. Sum. J. Mot. [26] at 13.) The text of O.R.S. 30.920(1)(b) provides that the burden is on the plaintiff to prove that the product reached the user or consumer—which in this case is the City of Sherwood—without any substantial change in the condition in which it was sold. Sergeant Powell has met this burden. By its terms, O.R.S. 30.920(1)(b) is directed at the expected and actual condition of the product *at the time it reaches* the user or consumer. Adlerhorst introduces

testimony, including that of Mr. Reaver, that the training did change Azi's behavior. However this training occurred *after* Azi reached the City. Powell introduces the testimony of Dr. Polsky that Azi was defective and unreasonably dangerous before the sale and before the training started. The evidence in the record constitutes a genuine issue of fact as to whether Azi's post-sale training "substantially changed" the dog.

Because there is a genuine issue of fact regarding both the "unreasonably dangerous" and "without substantial change" elements, I DENY Adlerhorst's motion for summary judgment for Sergeant Powell's strict product liability claim.

### C. Plaintiff's Negligence Claim

Sergeant Powell also alleges a common law negligence claim against Adlerhorst, alleging Adlerhorst erred in failing to evaluate, screen, and determine the suitability of Azi when the dog was allegedly over-aggressive. Essentially Powell asserts that Azi was unfit to be a police service dog. Adlerhorst argues that although Powell has alleged separate negligence and strict product liability theories, both claims are controlled by the substantive product liability law and statutes, and therefore Powell cannot maintain an independent negligence claim along with the strict product liability claim. Powell argues that his common law negligence claim is separate and is not controlled by the product liability laws.

The definition of a "product liability civil action" is set forth in O.R.S. 30.900:

> A civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
>
> (1) Any design, inspection, testing, manufacturing or other defect in a product;
>
> (2) Any failure to warn regarding a product; or
>
> (3) Any failure to properly instruct in the use of a product.

10 –OPINION AND ORDER

Or. Rev. Stat. 30.900. Adlerhorst relies on *Kambury v. Daimler Chrysler Corp*, 185 Or. App. 635, 60 P.3d 1103 (2003), and *Crosswhite*, 411 F. Supp. 2d 1228, to support its position. However, the common thread among these and other cases is the application of the statute of limitations or the statute of ultimate repose to a negligence or breach of warranty claim alleging facts constituting a "product liability civil action" as defined in O.R.S. 30.900. In these cases, the plaintiff's strict product liability claim was barred by the applicable statute, and the issue was whether the negligence or warranty claim was similarly barred. *See, e.g.*, *Philpott v. A.H. Robins Co.*, 710 F.2d 1422, 1424 (9th Cir. 1983) (O.R.S. 30.905(1), providing that a product liability civil action cannot be commenced later than eight years after the date on which the product was first purchased for use or consumption, applied to all of the plaintiff's claims, including negligence, breach of warranty, and willful misconduct); *Jamison v. Spencer R.V. Center, Inc.*, 98 Or. App. 529, 531–32, 779 P.2d 1091–93 (1989) (action for negligence against the seller of a product who had assembled the parts, was a product liability action under O.R.S. 30.900 and so was governed by the eight-year product liability statute of ultimate repose and not a ten-year negligence statute of limitations); *Bancorp Leasing and Financial Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 277 (9th Cir. 1987) (two-year statute of limitations of O.R.S. 30.905(2), not the four-year statute applicable to breach of warranty claims, governed the plaintiff's strict liability, negligence, and breach of warranty claims).

In *Kambury*, the Oregon Court of Appeals held that the plaintiff's negligence claim stemming from a products liability action was "subject to and barred by the two-year statute of limitations for product liability civil actions" under O.R.S. 30.905(2). *Kambury*, 195 Or. App. at 640. Likewise, this court held in *Crosswhite* that O.R.S. 30.900 "embraces all theories a plaintiff can claim in an action based on a product defect" including "claims based on theories of

11 –OPINION AND ORDER

negligence, strict liability, breach of warranty and fraudulent misrepresentation." *Crosswhite*, 411 F. Supp. at 1231 (quoting *Kambury*, 185 Or. App. at 639; *Simonsen v. Ford Motor Co.*, 196 Or. App. 460, 466, 102 P.3d 710, 714 (2004)). The *Simonsen* case that *Crosswhite* quotes also focuses on whether breach of warranty claims are governed by the statute of repose for product liability actions. *Simonsen*, 196 Or. App. at 479.

Adlerhorst has cited no cases, and I have found none, holding that a negligence action cannot co-exist with a viable strict product liability claim. Without any authority suggesting that a plaintiff cannot proceed on both theories, I decline to accept Adlerhorst's argument in the context of this case.

I also decline to accept Adlerhorst's argument that no reasonable jury could find that Adlerhorst knew or reasonably should have known Azi was overly aggressive, disobedient, or vicious to support a common law negligence claim. As discussed above, a reasonable jury could find from Dr. Polsky's testimony that, even before Adlerhorst sold Azi to the City, the dog demonstrated its hyper aggressive tendencies, including its refusal to release a bite on command—a behavior Mr. Reaver concedes reveals a dog is unfit for use as a police service dog. Dr. Polsky's testimony also would permit a jury to infer Mr. Reaver knew or reasonably should have known from his observations of the dog that it was disobedient, over-reactive, and would not release from a bite. Therefore, a reasonable jury could properly infer Mr. Reaver knew or reasonably should have known that Azi did not have a suitable temperament for a police dog and never should have been sold to the City of Sherwood for that purpose.

Because there is a genuine issue of fact of whether Adlerhorst knew or should have known that Azi was unfit to be a police dog before it sold Azi to the City, I DENY Adlerhorst's motion for summary judgment for Sergeant Powell's common law negligence claim.

### E. CONCLUSION

As explained above, Defendant Adlerhorst has not carried its burden to demonstrate no genuine issue of material fact exists. A reasonable jury could find Azi was defective and unreasonably dangerous at the time of the sale to the City of Sherwood and that Azi reached the City without substantial changes. A reasonable jury could also find Mr. Reaver knew or reasonably should have known Azi was not fit for police dog service and never should have been sold to the City. Therefore, I DENY Defendant Adlerhorst's Motion for Summary Judgment [26].

DATED this __4th__ day of November, 2015.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Judge